NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0313n.06

No. 25-3842

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 17, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JOSE A. NADER, M.D., | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF |
| NEW YORK LIFE INSURANCE COMPANY, | ) ) | OHIO |
| Defendant-Appellee. | ) ) | OPINION |
|  | ) ) | |

Before: CLAY, GIBBONS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Jose A. Nader has been complaining to New York Life Insurance Company for over 20 years about how it calculates the cost-of-living adjustment for his disability insurance payments. When he finally sued, the district court concluded the applicable statutory and contractual limitations periods barred his claims. Nader appeals that determination. We do not consider most of his arguments, as he did not raise them before the district court. And we conclude that his properly raised arguments regarding the limitations periods are unpersuasive. Accordingly, we affirm.

**BACKGROUND**

Because we review the district court's dismissal at summary judgment, we recite the facts in the light most favorable to the losing party—here, Nader—relying largely on the uncontested documentary proof in the record. *Hartman v. Thompson*, 931 F.3d 471, 477–78 (6th Cir. 2019).

This case is about a disability insurance policy that New York Life issued to Nader in 1991. In his application, Nader requested a monthly benefit payment, subject to various adjustments. New York Life issued the policy with an effective date of coverage of December 28, 1991. The policy provided that the parties' "entire contract" consisted of the insurance policy plus "any attached riders or endorsements, and the attached copy of the application." Policy, R. 1-1, PageID 39.

Relevant here is the Cost-of-Living Benefit Rider ("COLB Rider") that issued with the policy. Nader checked a box for "COLB 5%" when filling out his application, triggering the inclusion of the rider with his policy. This COLB Rider continually increased Nader's base monthly benefit to counteract inflation. As detailed by the rider, starting after the first year of benefits, New York Life would annually adjust a $12,000 base monthly benefit based on changes in the Consumer Price Index for All Urban Consumers ("CPI-U"), capped at a 5% annual increase. To effectuate these terms, New York Life would calculate Nader's benefits by multiplying the $12,000 monthly benefit by a factor tied to changes in the CPI-U, subject to that 5% annual cap. But since that 5% only served as a cap, it was always plausible—even likely—that his benefits would increase by less than that amount each year. The COLB Rider also froze once Nader turned 65, meaning his monthly payments would not increase for inflation after that point.

During a 1999 residential move, Nader lost his original copy of the policy. Accordingly, New York Life sent him a replacement—the "true and accurate copy of the Policy" that Nader attached to his complaint. Compl., R. 1-1, PageID 13. That copy contains the COLB Rider discussed above.

In 2000, after experiencing several severe health issues, Nader submitted a total disability claim under his policy. New York Life approved that claim as of February 24, 2000, and began

paying the $12,000 base monthly benefit. Since then, Nader has remained disabled and thus entitled to benefits which New York Life has continually paid. New York Life has continued paying Nader throughout this litigation.

The parties' dispute concerns the amount New York Life owed Nader after his first year of payments and in each year since. They agree that the policy required a $12,000 payment in year one. They disagree about how much that amount should have increased annually for the cost-of-living adjustment, and how New York Life should have calculated the increase. After the first year, New York Life adjusted Nader's benefit under the COLB Rider's formula, raising it to $12,408. Nader believed he was entitled to a 5% increase to $12,600 and wrote to notify New York Life that his payments did not reflect that amount. A New York Life customer care specialist responded a week later, telling him that $12,408 reflected the amount due under the COLB Rider's terms. She explained that the company "divide[s] the current CPI-U factor by the CPI-U factor for 1999 to determine the new increase factor" each year, NYL Docs., R. 30-1, PageID 686, and that 5% was simply the maximum annual increase the policy allowed, not a guaranteed rate. Thus, New York Life arrived at its number by dividing the 2001 CPI-U (174.3) by the 1999 CPI-U (168.5), which yielded an increase factor of 1.034—meaning that New York life increased the monthly benefit by 3.4 percent, from $12,000 to $12,408.

Nader has since repeatedly disputed his cost-of-living benefit and repeatedly received the same response from New York Life. Notably, he does not contend that New York Life is improperly applying the COLB Rider. Instead, he argues that the COLB Rider itself was not part of the insurance policy that he elected in 1991 because that policy, he claims, provided a fixed 5% annual cost-of-living adjustment. Despite raising this argument to New York Life since 2002, Nader did not sue the company until 2023 when he filed a complaint alleging that it breached the

contract by limiting annual cost-of-living adjustments to changes in the consumer price index and imposing other annual limits on cost-of-living adjustments to his benefits.

Upon New York Life's motion for summary judgment, the district court concluded that two separate limitations periods barred Nader's claims. *First*, it considered Ohio's limitations period for contract claims, § 2305.06 of the Ohio Revised Code. It found that Nader had "actual knowledge" of the COLB calculations as early as 2002, meaning the 15-year statute of limitations period had long since run. D. Ct. Op., R. 49-1, PageID 6360. Nader made almost no limitations arguments below. But, reading generously, the district court located two relevant sentences in Nader's 35-page brief: "Defendant's procedural argument regarding Ohio's statute of limitations fails to acknowledge the continuing violation doctrine. Each monthly payment constitutes a separate breach, creating a continuing violation that restarts the limitation period." *Id.* (quoting Resp. to MSJ, R. 35, PageID 5720). The district court reasoned that even "if not waived," this argument would fail because Nader's complaint is not about a recurring miscalculation under the COLB Rider's terms. *Id.* at PageID 6361. Rather, Nader's complaint takes issue with the "continuing effects" of incorporating the rider and its formula into his insurance policy in the first place. *Id.* As the district court explained, the Ohio Supreme Court does not recognize the "continuing effects of prior violations" to save claims from Ohio's limitations period for contract claims. *Id.* (quoting *State ex rel. Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 594 (Ohio 2010)).

*Second*, the district court recognized that even if Ohio's statute of limitations did not bar Nader's claims, a separate contractual limitations period did. Ohio law permits parties to set their own limitations period, so long as it is reasonable. *Angel v. Reed*, 891 N.E.2d 1179, 1181 (Ohio 2008). Nader's policy requires written notice of a claim within 30 days after a disability starts or a covered loss occurs and written proof of that disability within 90 days of each period for which

a benefit is payable or within 90 days after any covered loss occurs. It also bars a party from suing "after 3 years from the date proof is required to be given." Policy, R. 1-1, PageID 36. In other words, if Nader wanted to challenge a monthly payment, the policy required him to sue within three years. The district court concluded that Nader's 2023 filing came "well after the contractual limitations period." D. Ct. Op., R. 49-1, PageID 6362.

Nader timely appealed.

### ANALYSIS

We agree with the district court's conclusion that Nader's claims are time-barred. As an initial matter, we echo the district court's observation that Nader's argument below regarding the Ohio limitations period was so cursory that it is unclear whether he preserved any arguments as to the timeliness of his claims. And he advanced no argument concerning the policy's limitations period. But, because the district court considered the merits of the limitations questions, we will review its conclusion.

As the district court explained, Nader knew the terms of the policy, including the COLB Rider, as early as January 2002. At that point, after his communications with New York Life, he learned that the policy did not contain a 5% clean cost-of-living adjustment. Instead, the COLB Rider provided that New York Life would adjust Nader's monthly benefit by a "factor" that represented the change to the cost of living based on the CPI-U. Policy, R. 1-1, PageID 41. Because he knew about the inclusion of those terms of the contract over two decades ago, we agree with the district court that both Ohio's statutory limitations period and the policy's limitations period bar Nader's suit.

Nader's various counterarguments do not persuade us otherwise. In large part, Nader raises arguments that he never presented to the district court. He argues that the limitations period should

be tolled for various equitable reasons, including that he has suffered from illness, was mentally unsound, and that New York Life fraudulently concealed documents. We do not address these arguments because Nader did not raise them below and so has forfeited them. *Franklin v. Franklin County*, 115 F.4th 461, 479 (6th Cir. 2024).

Two arguments remain that Nader has arguably not forfeited. *First*, Nader claims that since there is no copy of his original insurance policy, we should look to his application which says there is a 5% cost-of-living benefit. But it was Nader who lost the original copy of the policy. And we base our analysis on what Nader attested is the "true and accurate copy of the Policy" in his complaint. Compl., R. 1-1, PageID 13.

*Second*, Nader contends that the "continuing breach doctrine" saves his claim from untimeliness, which is akin to his, albeit sparse, argument to the district court regarding the "continuing violation" doctrine. Appellant Br. at 42–44; Reply Br. at 28–31. He argues that each time New York Life paid his monthly disability payment, it underpaid him. And that under an installment theory, each payment is a new breach that gives rise to a new limitations period. *See Vitek v. AIG Life Brokerage*, No. 06-CV-615, 2008 WL 4372670, at *9 (S.D. Ohio Sep. 22, 2008). We agree with Nader that in some cases, each payment represents a distinct breach of contract. But here, Nader's argument is not that New York Life is violating a law or the terms of the contract's rider with each monthly payment. Indeed, the rider Nader attached to his complaint says New York Life will pay him benefits according to the formula described above (not the 5% annual increase he desires). And Nader never argues that New York Life has underpaid him under the terms of the COLB Rider. Rather, the crux of his complaint centers on the inclusion of the rider's terms, which he learned about in 2002, and the "continuing effects" of the rider, which, as the district court explained, do not toll limitations period in Ohio for breach of contract actions. *See*

*State ex rel. Nickoli*, 923 N.E.2d at 594. That is also why Nader's suit cannot overcome the parties' 3-year contractual limitations period. Accordingly, the district court did not err by concluding that both the statutory and contractual limitations periods bar Nader's claims.

## CONCLUSION

We affirm.